IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-CV-02243-RPM-CBS

OLIVEA MARX,

       Plaintiff,

v.

GENERAL REVENUE CORPORATION, an Ohio corporation, and
KEVIN COBB,

       Defendants.

---

### DEFENDANTS' TRIAL BRIEF

---

COME NOW the Defendants, General Revenue Corporation ("GRC") and Kevin Cobb (the "Defendants") by and through their counsel, Adam L. Plotkin, P.C., and submit the following Trial Brief:

### I. INTRODUCTION

Defendants respectfully submit that the following legal issues may be pertinent for the Trial scheduled for May 17, 2010:

1) Plaintiff's FDCPA Claims (**Section II,** page 2);

2) Administrative Wage Garnishment (**Section II (c) (1)**, page 8)

3) The FDCPA Damage Elements and Limitations (**Section III**, page 11);

4) The "Bona Fide Error" Defense is a Complete Defense to the Imposition of Liability under the FDCPA (**Section IV**, page 14).

## II.     PLAINTIFF'S FDCPA CLAIMS

Plaintiff alleges that Defendants violated various provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* ("FDCPA").  The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); Johnson v. Riddle, 305 F.3d at 1107, 1117 (10th Cir. 2002) (quoting § 1692(e)).  Importantly, The FDCPA was enacted as a "shield" and not a "sword."  See, Emanuel v. American Credit Exch., 870 F.2d 805, 808 (2nd Cir. 1989).  In determining whether conduct violates the FDCPA, reference must be made to the purpose and intent of the FDCPA's statutory scheme.  See, Morse v. Dun & Bradstreet, Inc., 87 F. Supp. 2d 901, 903-04 (D. Minn. 2000).  Where a debt collector's conduct "in no way exemplifies the abusive behavior or false or misleading practice that Congress had in mind when it enacted the FDCPA," then there is no violation.  Id. at 904.

In the case before the Court, Plaintiff alleges that Defendants violated the FDCPA by "falsely threatening to garnish up to 50 percent (50%) of the Plaintiff's wages," that Defendants "falsely threatened to take the money owed on the Account out of the Plaintiff's bank account," and that Defendants "called the Plaintiff multiple times a day to annoy, abuse and harass the Plaintiff while attempting to collect the Account.  See, Plaintiff's First Amended Complaint, Docket Entry No. 22, ¶¶ 19-21.  Plaintiff also alleges that a facsimile document that was sent to the Human Resources Department of her employer (attached as Exhibit A to Plaintiff's First Amended Complaint and hereinafter referred to as the "Fax") violated 15 U.S.C. § 1692c(b).  Id., ¶ 46.  Plaintiff alleges specific violations of the following FDCPA sections: § 1692c(b); §§

1692d, preface, d(2), d(5); § 1692e, preface, e2(A), e(4), e(5), e(10); and § 1692f, preface. See, Plaintiff's First Amended Complaint, ¶ 59; Final Pre-Trial Order.

In order to prevail on an FDCPA claim, Plaintiff must establish three (3) requirements: (i) the plaintiff who has been the target of collection activity must be a "consumer" as defined under 15 U.S.C. §1692a(3); (ii) the defendant collecting the debt must be a "debt collector" as defined in 15 U.S.C. §1692a(6); and (iii) the defendant must have engaged in any act or omission in violation of the FDCPA. Morgan v. Credit Adjustment Board, Inc., 999 F. Supp. 803, 805 (E.D. Va. 1998).

### A. 15 U.S.C. § 1692c(b).

15 U.S.C. § 1692c(b) states:

> Except as provided in section 1692b[1] of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

The FDCPA defines a "communication" as "…the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. §1692a(2). The courts vary with respect to whether the word "communication" should be read broadly or narrowly. The Tenth Circuit has not specifically weighed in on this issue, but at least one district court in the Tenth Circuit has applied a narrow interpretation of the term "communication." See, Biggs v. Credit Collections Inc., 2007 U.S. Dist. LEXIS *84793 (W.D. Okla. 2007)(opinion attached hereto). In Biggs, the court determined that voicemail messages left on the plaintiffs' answering

---

[1] Section 1692b allows communications with persons other than a consumer for the purpose of acquiring location information. See, 15 U.S.C. § 1692b.

machine, " 'convey[ed] no 'information regarding a debt.'" The court noted that the FDCPA definition of communication, "...does not include messages or communications that do not impart (or are at least intended to impart) information about a debt." Id. at *13, footnote 3. The court concluded that, "[n]o amount of liberal construction can broaden the statutory language to encompass the words recorded in these voice mails." Id. at *13.  Similarly, in Horkey v. J.V.D.B. & Assocs., 179 F. Supp.2d 861 (N.D. Ill. 2002), the court rejected the plaintiff's argument that the defendant had violated § 1692c(b) of the FDCPA by contacting the plaintiff's co-worker and using inappropriate language and profane language in speaking to the plaintiff's co-worker because the defendant had not discussed the plaintiff's debt with the co-worker.  Id. at 867-68.

Some courts in other circuits have declined to apply the more narrow interpretation of "communication" as set forth in Biggs.  See e.g., Ramirez v. Apex Financial Management, LLC, 567 F. Supp. 2d 1035, 1041 (N.D. Ill. 2008)(finding that a message was an indirect communication regarding the plaintiff's debt where it conveyed pertinent information including stating that it was a matter that needed to be attended to); See, Foti v. NCO Financial Systems, Inc., 424 F. Supp. 2d 643, 640-60 (S.D.N.Y. 2006)(holding telephone message was a communication "given the obvious purpose of the message was to provide the debtor with enough information to entice a return call…").

Defendants note that the alleged violation of 15 U.S.C. § 1692c(b) was addressed in Plaintiff's Motion for Partial Summary Judgment, which was denied by the Court. See, Docket Entry No. 52, Recommendation of United States Magistrate Judge and Docket Entry No. 53, Order Denying Plaintiff's Motion for Partial Summary Judgment. As set forth in Defendants' Response to Plaintiff's Motion for Partial Summary Judgment (Docket Entry No. 31), Defendants submit that the Fax that was sent to Plaintiff's place of employment could not

reasonably be found to constitute a "communication" as defined above or that it was sent "in connection with the collection of a debt." Defendants submit that the Fax did not convey any information regarding Plaintiff's debt, directly or indirectly, that would lead the reader to know that Plaintiff had an account with GRC. Moreover, the sole purpose of sending the Fax was to verify Plaintiff's employment and eligibility for administrative wage garnishment. Accordingly, applying the plain definition of "communication" set forth in the FDCPA and the elements of 15 U.S.C. § 1692c(b), Defendants submit that the sending of the Fax did not violate this section of the FDCPA.

### B. 15 U.S.C. § 1692d.

15 U.S.C. § 1692d provides: "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." This provision provides a non-exclusive list of the type of conduct which amounts to a violation of this provision. See, 15 U.S.C. § 1692d(1)-(6). Plaintiff has alleged that Defendants have violated the general provision of § 1692d of the FDCPA as well as subsections d(2), and d(5), which prohibit the following activities:

> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader….
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass any person at the called number.

15 U.S.C. § 1692d(2), (5).

In determining whether certain conduct has "the natural consequence of which is to harass," an objective standard is applied. See, Rutyna v. Collection Accounts Terminal, Inc., 478 F.Supp. 980, 982 ("actual effect on the recipient is irrelevant"). Section 1692d prohibits only oppressive and outrageous conduct, and is not intended to protect consumers from the mere

inconvenience or embarrassment that is the natural consequence of debt collection. See, Bieber v. Associated Collection Services, Inc., 631 F. Supp. 1410, 1417 (D. Kan. 1986)(citing Jeter v. Credit Bureau, Inc., 760 F. 2d 1168, 1179 (11th Cir. 1985)); Beattie v. D.M. Collections, Inc., 754 F. Supp. 383, 393-94 (D. Del. 1991). As stated by the court in Beattie:

> Subsection 1692d prohibits only oppressive and outrageous conduct. It is not intended to shield even the least sophisticated recipients of debt collection activities from the inconvenience and embarrassment that are natural consequences of debt collection. In fact, it would be inconsistent with the language of subsection 1692d to construe the subsection to forbid conduct that is not intended and does not naturally tend to harass, oppress or abuse. Subsection 1692d does not preclude debt collectors from making non-abusive statements designed to encourage voluntary payment…
>
> When it passed the FDCPA, Congress had in mind such abusive practices as:
>
>> obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentations of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.
>
> S. Rep. No. 950382, 95th Cong., 1st Sess., reprinted in 1977 U.S. Code Cong. & Admin. News 1695, 1696.

Id. at 394 (citations omitted).

Moreover, statements of lawful actions that a collector intends to take do not violate § 1692d. See, Smith v. Transworld Sys., 1997 U.S. Dist. LEXIS 23775, *21-22 (S.D. Ohio July 31, 1997)(finding that mentioning post-judgment remedies available if litigation occurred and the creditor prevailed did not violate §1692d)(opinion attached hereto).

Subsection 1692d(2) is meant to deter language that is similar to profanity or obscenity, such as name calling, racial slurs, and other remarks that are similar in their offensiveness to obscene or profane remarks. See, Jeter, 760 F. 2d at 1178.

Subsection 1692d(5) does not specifically define the number of telephone calls within a certain period which would violate the FDCPA. In general, whether telephone calls amount to actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls. See Kerwin v. Remittance Assistance Corp., 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008)("intent to annoy, abuse, or harass may be inferred from the frequency of the phone calls, the substance of the phone calls, or the place to which phone calls are made.")(citations omitted); See also, Grismore v. United Recovery Sys., LP, 2006 U.S. Dist. LEXIS 54859, *19-21 (D. Ariz. August 3, 2006)(granting summary judgment in favor of debt collection agency and finding that no reasonable jury could find that nineteen calls over three month period violated § 1692d(5))(opinion attached hereto).

**C.    15 U.S.C. § 1692e.**

15 U.S.C. § 1692e states: "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." This section of the FDCPA also provides various non-exclusive examples of what amounts to a violation of this provision. See, 15 U.S.C. § 1692e (1)-(16).

Plaintiff has alleged that Defendants have violated the general provision of § 1692e of the FDCPA as well as subsections e2(A), e(4), e(5), and e(10), which prohibit the following conduct:

> (2) The false representation of-
>    (A) the character, amount, or legal status of any debt;….
>
> (4)  The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
>
> (5)  The threat to take any action that cannot legally be taken or that is not intended to be taken…

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e2(A), e(4)-e(5), and e(10).

While the U.S. Court of Appeals for the Tenth Circuit has not directly weighed in on the issue, the most widely accepted test for measuring whether a representation constitutes a violation of this section is the "least sophisticated consumer" standard. See, Cloman v. Jackson, 988 F.2d 1314, 1318 (2nd Cir. 1993)(collecting cases); See also, Dikeman v. National Educators, Inc., 81 F.3d 949, 954 n.14 (10th Cir. 1996)(quoting Cloman for the proposition that "'the FDCPA protects all consumers, the gullible as well as the shrewd'"). While the "least sophisticated consumer" standard protects gullible and naïve consumers, as well as shrewd consumers, it also prevents the imposition of liability for bizarre or idiosyncratic interpretations and preserves a quotient of reasonableness. See, Cloman, 988 F.2d at 1320; See also, White v. Goodman, 200 F.3d 1016, 1020 (7th Cir. 2000)("The Act protects the unsophisticated debtor, but not the irrational one.").

In the context of purported threats of garnishment, the operative inquiry is whether garnishment is authorized by law and by the creditor. See, Bieber v. Associated Collection Services, Inc., 631 F. Supp. 1410 (D. Kan. 1986)(finding no violation of the FDCPA by representing that nonpayment would result in garnishment because state law provided that garnishment was lawful where debt had not been assigned to debt collector, and the accounts were placed for collection purposes only.).

### 1. Garnishment is Permissible for Student Loans.

Plaintiff's account with GRC was assigned by Edfund for collection. Edfund provides student loan guarantee services for students across the United States. EdFund is an auxiliary of

the California Student Aid Commission. Plaintiff's account with GRC is a federally guaranteed student loan guaranteed by EdFund. As a federally guaranteed student loan, Plaintiff's account is subject to the Higher Education Act of 1965, as amended, 20 U.S.C. § 1070, *et. seq.* (the "HEA"). Pursuant to the HEA, defaulted federally guaranteed student loans are subject to administrative wage garnishment. Specifically, the HEA provides, in pertinent part:

> Notwithstanding any provision of state law, a guaranty agency…may garnish the disposable pay of an individual to collect the amount owed by the individual…provided that- -
> (1) the amount deducted for any pay period may not exceed 15 percent of disposable pay, except that a greater percentage may be deducted with the written consent of the individual involved….

20 U.S.C. § 1095a(a)(1).

The fiscal, administrative, and enforcement provisions are codified in 34 C.F.R. § 682.410. The federal regulations require a guaranty agency to initiate wage garnishment proceedings against all eligible borrowers, except when the borrower has no wages that can be garnished under the procedures prescribed by the regulations. See, 34 C.F.R. § 682.410(b)(6)(iii)-(iv). Pursuant to the HEA, "…if an individual has been reemployed within 12 months after having been involuntarily separated from employment, no amount may be deducted from the disposable pay of such individual until such individual has been reemployed continuously for at least 12 months." 20 U.S.C. §1095a(a)(7). The federal regulations similarly specifically prohibit garnishment of a borrower if the borrower is known to have been involuntarily separated from employment, until the borrower has been reemployed continuously for at least 12 months. See, 34 C.F.R. § 682.410(b)(9)(G).

The administrative garnishment procedures set forth in the HEA and accompanying regulations alleviate the guarantors from having to file a lawsuit, obtain a judgment, and then

9

collect via judicial garnishment.  See, Maynard v. Premiere Credit of North America, LLC, 2007 U.S. Dist. LEXIS *28038, *9-10 (April 16, 2007 W.D. Wash) (opinion attached hereto).

### D. 15 U.S.C. § 1692f.

Finally, 15 U.S.C. § 1692f states: "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  As with §§ 1692d and 1692e, § 1692f provides a non-exclusive list of what constitutes a violation under this provision.  See, 15 U.S.C. § 1692f (1)-(8).  Plaintiff has alleged that Defendants violated the general provision of §1692f.

The FDCPA does not specifically define the terms "unfair" or "unconscionable."  Courts have found that a wide range of conduct does not violate this provision of the FDCPA.  See, Adams v. Law Offices of Stuckert & Yates, 926 F. Supp. 521, 528 (E.D. Pa. 1996)(after finding that Defendant violated §1692g of the FDCPA, the court declined to find an additional violation for the same conduct under § 1692f because it found that the violations did not reflect "…an abuse of Defendant's superior economic position and level of sophistication, the hallmark of unconscionability.")(citing Peoples Mortgage Co., Inc. v. Federal Nat'l Mortgage Ass'n, 856 F. Supp. 910, 927 (E.D. Pa. 1994)); Catherman v. Credit Bureau of Greater Harris, 634 F. Supp 693, 695 (E.D. Pa. 1986)(finding that the defendant did not violate §1692f when its two collection notices suggested that the consumer might endanger her credit rating unless she immediately paid her debt); Wilson v. Business & Professional Credit Mgmt., Inc., 1986 U.S. Dist. LEXIS 31002 (D. Neb. Aug. 26, 1986)(finding collection agency's garnishment of a Social Security recipient's checking account did not violate § 1692f or § 1692d)(opinion attached hereto).

### III.     FDCPA DAMAGE ELEMENTS AND LIMITATIONS

#### A. General Damages Provision.

The FDCPA provides for recovery of "any actual damages sustained" as a result of a violation of the FDCPA, as well as "such additional damages as the court may allow, but not exceeding $1,000," and "the costs of the action, together with a reasonable attorney's fee determined by the court." 15 U.S.C. § 1692k(a)(1), (2)(A), (3). The statutory damage limitations are capped at a maximum of $1,000.00 **per lawsuit**, not per violation, or per party. White v. Bruck, 927 F.Supp 1168 (W.D. Wis. 1996)(statutory damages under the FDCPA capped at a total of $1,000.00 in an FDCPA action brought by husband and wife plaintiffs based upon collection letter directed to husband); Wright v. Finance Service of Norwalk, Inc., 22 F.3d 647 (6th Cir. 1994).

#### B. Emotional Distress Damages.

Potential recoverable damages under the FDCPA include damages for emotional distress. See, McGrady v. Nissan Motor Acceptance Corp., 40 F. Supp. 2d 1323, 1338 (M.D. Ala. 1998); Teng v. Metro. Retail Recovery, Inc., 851 F. Supp. 61, 68-69 (E.D.N.Y. 1994).  Given the limited case law interpreting emotion distress damages under the FDCPA, some courts have turned to analogous case law under the Fair Credit Reporting Act in evaluating claims for emotional distress.  See, Smith v. Law Offices of Mitchell Kay 124 B.R. 182, 187 (D. Del. 1991).  The majority of these cases hold that transitory symptoms of emotional distress do not support a claim for emotional distress and that unsupported self-serving testimony by the plaintiff is not sufficient to establish emotional distress damages.  See, Wantz v. Experian Information Solutions 386 F.3d 829, 834 (7th Cir. 2004); Cousin v. Trans Union Corp. 246 F.3d 359, 371 (5th Cir. 2001); Costa v. National Action Financial Services, 634 F. Supp. 2d 1069

(E.D.Cal. 2007). Generally, emotional distress is unavailable unless the circumstances of the injury are sufficiently explained and documented. Wantz, 386 F.3d at 834 (claim under FCRA). In addition, "[w]here the plaintiff's own testimony is his only evidence of emotional damages, 'he must explain the circumstances of his injury in reasonable detail' and not rely on conclusory statements, unless the 'facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action." Burns v. Anderson, Crenshaw & Associates, L.L.C., 07cv1192-WYD-BNB, dated August 15, 2008, Docket No. 62, p. 12 (Daniel, J.) (opinion attached hereto)(quoting Wantz, 386 F.3d at 834 (7th Cir. 2004)).

In Cousin, *supra,* the Court described the types of evidence necessary to support a claim for emotional distress, stating that a plaintiff alleging intangible loss must set forth evidence with specificity which includes "corroborating testimony or medical or psychological evidence in support of the damage award." See Cousin, 246 F.3d at 371.

**1.  Intentional Infliction of Emotional Distress Standard.**

In addition, in FDCPA cases, there is a split among the federal courts as to whether a plaintiff's alleged emotional distress damages must be evaluated under the intentional infliction of emotional distress ("IIED") standard.  Several courts, have found that a plaintiff's alleged emotional distress damages must be evaluated under the IIED standard. See, Costa v. National Action Financial Services, 634 F. Supp. 2d 1069 (E.D.Cal. 2007); Carrigan v. Central Adjustment Bureau, Inc. 502 F.Supp. 468, 470-71 (N.D. Ga. 1980); Venes v. Professional Service Bureau, Inc., 353 N.W.2d 671, 674-75 (Minn.Ct.App. 1984).  Other courts have found that a plaintiff does not need to meet the requirements of the state law IIED standards in order to

recover emotional distress damages under the FDCPA.  See e.g., McGrady v. Nissan Motor Acceptance Corp., 40 F. Supp. 2d 1323, 1338-39 (M.D. Ala. 1998).

The U.S. Court of Appeals for the Tenth Circuit has not reached a determination on this issue.  However, at least one court in this District has held that in order to prove emotional distress under the FDCPA, a Plaintiff must meet the standard for proving IIED under Colorado law.  See, Burns, *supra,* 07cv1192-WYD-BNB, Order of August 15, 2008, Docket No. 62, p. 7-8 (Daniel, J.).  In Burns, Judge Daniel found the reasoning set forth in the Costa decision, *supra*, stating that a plaintiff must meet the IIED standard in FDCPA cases, to be persuasive and the better reasoned standard for evaluating emotional distress damages for FDCPA claims.  Id., at p. 7.  Judge Daniel specifically noted "the state tort law of IIEC [sic] seems to be the most appropriate mechanism for such proof, as it covers emotional distress damages that occur from harassing and other outrageous behavior."  Id. at p. 9 (citation omitted).  Other courts have similarly applied the IIED standard to a claim for emotional distress damages under the FDCPA.

The elements for IIED in Colorado are:  "1. the defendant engaged in extreme and outrageous conduct; 2. the defendant engaged in the conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and 3. the plaintiff incurred severe emotional distress which was caused by the defendant's conduct."  Culpepper v. Pearl St. Bldg., Inc., 877 P.2d 877, 882 (Colo. 1994)(citing CJI-Civ. 3d 23:1; Rugg v. McCarty, 476 P.2d 753 (1970)).  To create liability for intentional infliction of emotional distress, the level of "outrageousness" is "extremely high," and must be "so outrageous in character and so extreme in degree as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  McCarty v. Kaiser-Hill Co., L.L.C., 15 P.3d 1122, 1126 (Colo. Ct. App. 2000)(citing Coors Brewing Co. v. Floyd, 978 P.2d 663 (Colo. 1999)).

13

## IV. THE "BONA FIDE ERROR" DEFENSE IS A COMPLETE DEFENSE TO THE IMPOSITION OF LIABILITY UNDER THE FDCPA

The so-called bona fide error defense provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

Like all affirmative defenses, the bona fide error defense is not even considered until after a debt collector has been found to have violated the Act. Johnson v. Riddle, 305 F.3d 1107, 1121 (10th Cir. 2002). Once a violation has been established, a debt collector may avail itself of the bona fide error defense to insulate itself against any liability associated with the violation. Johnson v. Riddle, 443 F.3d 723, 727(10th Cir. 2006); Jenkins v. Heintz, 124 F.3d 824 (7th Cir. 1997) *cert. denied* 523 U.S. 1022 (1998).

Over the years there has developed a split of authority among the circuits as to whether the bona fide error defense applies to mistakes of law. Id; See also, Richburg v. Palisades Collection, L.L.C. and Wolpoff & Abramson, 247 F.R.D. 457, 466 (E.D.Pa. 2008); Pescatrice v. Orovitz, P.A. and Dragutsky, No. 07CV60653-JIC, * 1 (S.D. Fla. March 27, 2008). Initially, some courts that considered the issue concluded that the bona fide error defense only applies to clerical mistakes. See, Baker v. G.C. Services Corp., 677 F.2d 775, 779 (9th Cir. 1982); Hulshizer v. Global Credit Servs., Inc., 728 F.2d 1037 (8th Cir. 1984); Picht v. Jon R. Hawks, Ltd., 236 F.3d 446, 451 (8th Cir. 2001). In recent years, an ever growing number of courts, including the U.S. Court of Appeals for the Tenth Circuit, have concluded that the bona fide

error defense applies to all types of mistakes, including mistakes of law. See, Johnson, 443 F.3d at 727 (10th Cir. 2006).[2]

In order to establish the bona fide error defense, the party must satisfy a three (3) prong test which includes the establishment that the violation was: 1) unintentional, 2) the result of a bona fide error, and 3) made notwithstanding the maintenance of procedures reasonably adapted to avoid such error from occurring.  15 U.S.C. § 1692k(c); Johnson, 305 F.3d at 1121.

### A. Unintentional Element of the Bona Fide Error Defense.

Determining whether an act is intentional for purposes of applying the bona fide error defense requires an application of a subjective test.  Richburg v. Palisades Collection, L.L.C. and Wolpoff & Abramson, 247 F.R.D. 457, 467 (E.D.Pa. 2008).  Pursuant to the applicable subjective test, a debt collector must only show that the violation was unintentional, not that the communication itself was unintentional.  Johnson, 443 F.3d at 728.  In order for an error to be bona fide, it must have been made in good faith, inadvertently, and without fraud or deceit. Caputo v. Professional Recovery Services, Inc., 261 F.Supp.2d 1249, 1257 (D.Kan. 2003).

In addition to the U.S. Court of Appeals for the Tenth Circuit, the vast majority of other courts that have considered this issue have also found that debt collectors must only show that they did not intentionally violate the Act.  Lewis v. ABC Business Servs., Inc. 135 F.3d 389, 402 (6th Cir. 1998) (debt collector must only show violation was unintentional); Kort v. Diversified Collection Servs., Inc., 394 F.3d 531, 537 (7th Cir. 2005) (same); Frye v. Bowman, Heintz, Boscia, Vician, P.C., 193 F.Supp.2d 1070, 1088 (S.D.Ind. 2002) (same).  In order to give effect to the defense, it is necessary to limit the intent element to a showing that a debt collector did not

---

[2] Defendants note that the United States Supreme Court is considering the split of authority with respect to whether the bona fide error defense applies to mistakes of law.  As of the date of this filing, the Supreme Court has not announced a decision.  See, Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, et.al., 129 S.Ct.  2863; 174 L.Ed. 2d 575, 2009 U.S. LEXIS 4841, 77 U.S.L.W. 3708 (U.S. 2009).

intentionally violate the Act. See, Johnson, 443 F.3d at 728 and Lewis, 135 F.3d at 402. As the U.S. Court of Appeals for Tenth Circuit stated:

> We conclude, in accordance with the Sixth and Seventh Circuits, that the only workable interpretation of the intent prong of the FDCPA's bona fide error defense is that a debt collector must show that the violation was unintentional, not that the underlying act itself was unintentional. In other words, a violation is unintentional for purposes of the FDCPA's bona fide error defense if the debt collector can establish the lack of specific intent to violate the Act.

Johnson, 443 F.3d at 728; Lewis, 135 F.3d 389 at 402 ("The debt collector must only show that the violation was unintentional, not that the communication itself was unintentional. **To hold otherwise would effectively negate the bona fide error defense."**)(emphasis added).

### B. The Violation Must be a Result of a Bona Fide Error.

The second element necessary to establish the bona fide error defense is for the debt collector to establish that the violation was the result of a bona fide error. An objective test is used to determine whether this prong of the defense is satisfied. Caputo, 261 F.Supp.2d at 1257. Traditionally, courts have considered errors to be bona fide when the error is made in good faith, inadvertently, and without fraud or deceit. Id; Kort, 394 F.3d at 538. A mistake of law can be bona fide if the law is unsettled and there is a good faith basis supporting the legal reasoning behind the mistake. See, Taylor v. Luper, Sheriff & Niedenthal Co., L.P.A., 74 F.Supp.2d 761 (S.D.Ohio 1999).

### C. Maintenance of Procedures Reasonably Adapted to Avoid An Error.

The third prong of the bona fide error defense requires a debt collector to prove that it maintained reasonable procedures designed to prevent the violation from occurring. Johnson, 443 F.3d at 728. Consideration of this prong of the defense requires the application of an objective test. Richburg, 247 F.R.D. at 467. This test requires a court to determine whether the debt collector actually implemented procedures to avoid errors and whether the procedures

employed were reasonable.  <u>Johnson</u>, 442 F.3d at 729.  Generally, it is this prong of the defense that is focused upon when the bona fide error that caused the violation involves a mistake of law.  <u>Richburg</u>, 247 F.R.D. at 467.  Often, the key to satisfying this prong of the defense centers on the due diligence practices of the debt collector and the reasonableness of such procedures.  <u>Kort</u>, 394 F.3d at 539; <u>Johnson</u>, 443 F.3d at 729.  Moreover, it is important to note that the bona fide error defense does not require debt collectors to take every conceivable precaution to avoid errors; it merely requires the procedures taken to be reasonable.  <u>Kort</u>, 394 F.3d at 539; <u>Hyman v. Tate</u>, 362 F.3d 965 (7th Cir. 2004).

Dated: March 31, 2010.

Respectfully submitted,

ADAM L. PLOTKIN, P.C.

By: s/ Steven J. Wienczkowski
_____

**Adam L. Plotkin**
**Steven J. Wienczkowski**
621 Seventeenth Street, Suite 1800
Denver, Colorado 80293
Telephone: (303) 296-3566
FAX: (303) 296-3544
E-mail: swienczkowski@alp-pc.com
Attorneys for Defendants

**Certificate of Service**

I hereby certify that on March 31, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

larsonlawoffice@gmail.com.

By: s/ Steven J. Wienczkowski

**Steven J. Wienczkowski**